## BALLOON NOTE
### (Fixed Rate)

This closing is payable in full at maturity. You must repay the entire principal balance of the loan and unpaid interest then due. The Lender is under no obligation to refinance the loan at that time. You will, therefore, be required to make payment out of other assets that you may own, or you will have to find a Lender, which may be the Lender you have this loan with, willing to lend you the money. If you refinance this loan at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain refinancing from the same Lender.

| | COLUMBUS, | GEORGIA |
|---|---|---|
| __July 23___ 19_99_ | [City] | [State] |

4515 Peru Drive, Columbus, Georgia 31907

### (PROPERTY ADDRESS)

1. **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $_100,800.00____, (this amount called "principal"), plus interest to the order of the Lender. The Lender is **SOUTHSTATES MORTGAGE, INC., D/B/A SOUTHERN FUNDING MORTGAGE.** I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the **"Note Holder."**

2. **INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of __9.24_%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(b) of this Note.

3. **PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month. I will make my monthly payments on the __28th__ day of each month beginning on __28th__ day of _August_____, 1999. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on _July 28, 2014_, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called "maturity date."

I will make my monthly payments at **101 Enterprise Court Suite 200, Columbus, Georgia 31904**, or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ _828.53_____.

4. **LOAN CHARGES**

There may be a penalty for partial or full prepayment. Please see attached Rider (if applicable).

5. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (I) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (II) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note of by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

6. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) **Late charge for Overdue Payments are 5% of payment or $ _41.42___,** or whichever is less.

   If the Note Holder has not received the full amount of any monthly payment by the end of 15 calender days after the date it is due, I will pay a late charge to the Note Holder. I will pay this late charge promptly, but only once on each late payment.

   (B) **Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   (C) **Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

   (D) **No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) **Payment of the Note Holder's Costs and Expense**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent allowed by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7. **GIVING OF NOTICES**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. **WAIVERS**

   I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. **UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed ( the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sol or transferred and Borrower is not a natural person) without Lendor's prior written consent, Lendor may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lendor if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument.

If Borrower faild to pay these sums prior to expiration of this period, Lendor may invoke any remedies permitted by this Security instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)
John W. Dixon                              -Borrower

_____ (Seal)
Mary Dixon                                  -Borrower

_____ (Seal)
                                                  -Borrower

**PAY TO THE ORDER OF:**
**EQUIPRIME, INC.**

BY: _____
SOUTHSTATES MORTGAGE, INC, D/B/A
SOUTHERN FUNDING MORTGAGE

A CERTIFIED TRUE AND CORRECT
COPY OF THE ORIGINAL

William H. Arey, P.C.
4800 Armour Road
Columbus, Georgia 31904

**William H. Arey**
Post Office Box 8641
Columbus, Georgia 31908

[Space Above This Line For Recording Data]

File No. _____   _____ ——— **SECURITY DEED** ——— _____

THIS SECURITY DEED ("Security Instrument") is given on **July 23, 1999**        . The grantor is
**John W. Dixon and Mary Dixon**

("Borrower"). This Security Instrument is given to
**Southstates Mortgage, Inc., d/b/a Southern Funding Mortgage**

which is organized and existing under the laws of **the State of Georgia**        , and whose
address is **101 Enterprise Court, Suite 200, Columbus, Georgia 31904**

("Lender"). Borrower owes Lender the principal sum of
**One Hundred Thousand Eight Hundred Dollars & No/100**

Dollars (U.S. $ **100,800.00**   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   **July 28, 2014**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in   **Muscogee**
County, Georgia:

**All that lot, Tract or parcel of land situate lying and being in Land Lot 143 of the Coweta Reserve of Muscogee County, Georgia, being known and designated as all of Lot 8, Block "F", Mt. Vernon Estates, as said lot is shown on a map or plat recorded in Plat Book 43, Page 55-A & B in the Office of the Clerk of the Superior Court of Muscogee County, Georgia.**

which has the address of   **4515 Peru Drive, Columbus**                         [Street, City],
Georgia        **31907**                  ("Property Address");
                  [Zip Code]

**Georgia**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011  9/90
Amended 4/98

(Page 1 of 6)

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Form 3011 9/90

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgement could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Form 3011 9/90

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of the Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Form 3011 9/90

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety and environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defence of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in the paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 14 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order**

Form 3011 9/90

Lender determines.  Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance.  The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein.  Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.  The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 21, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale.  If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

**22. Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower.  Borrower shall pay any recordation costs.

**23. Waiver of Homestead.**  Borrower waives all rights of homestead exemption in the property.

**24. Assumption not a Novation.**  Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**25. Security Deed.**  This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V.A. Rider | ☒ Other(s) [specify] **WAIVER OF BORROWER'S RIGHTS** | |

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it. IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.
Signed, sealed and delivered in the presence of:

_____ (Seal)
**John W. Dixon**                -Borrower
Social Security Number

_____
Unofficial Witness

_____ (Seal)
**Mary Dixon**                   -Borrower
Social Security Number

My Commission Expires July 19, 2002

_____ (Seal)
                                 -Borrower
Social Security Number

Notary Public, **Muscogee**                County

_____ (Seal)
                                 -Borrower
Social Security Number

Form 3011 9/90

State Georgia
County Muscogee

GRANTOR: John W. Dixon and Mary Dixon

LENDER: Southstates Mortgage, Inc., d/b/a Southern Funding Mortgage

DATE OF SECURITY DEED: July 23, 1999

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF PARAGRAPH 13 OF THE SECURITY DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN PARAGRAPH 13 HEREOF; (3) ACKNOWLEDGES THAT ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND  GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION;   AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

SIGNED, SEALED AND DELIVERED
IN THE PRESENCE OF:

_____ (SEAL)
John W. Dixon

_____ (SEAL)
Mary Dixon

_____ (SEAL)

_____
NOTARY PUBLIC

My Commission Expires July 19, 2002

20200008757 B: 12931 P: 193 ASGN
04/16/2020 11:08:00 AM Page 1 of 2
Danielle F. Forte County Recorder
Muscogee County County, GA
GA TRANS TAX: $
TRANSFER TAX ID:
eFile Participant IDs: 9578415599,7067927936

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

——————————————— Space above for Recorder's use ———————————————

Loan No:
Sver Ln No:

### ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VI**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST N.A., AS TRUSTEE OF THE IGLOO SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Security Deed: **7/23/1999**
Original Loan Amount: **$100,800.00**
Executed by (Borrower(s)): **JOHN W. DIXON & MARY DIXON**
Original Lender:  **SOUTHSTATES MORTGAGE, INC. DBA SOUTHERN FUNDING MORTGAGE**
Filed of Record:  In Book **5341**, Page **87**,
Document/Instrument No: **1999-0029403** in the Recording District of **MUSCOGEE, GA**, Recorded on **7/28/1999**.

Property more commonly described as: **4515 PERU DRIVE, COLUMBUS, GEORGIA 31907**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:  **10/31/2017**

**CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VI, BY ITS ATTORNEY-IN-FACT IGLOO SERIES III TRUST, BY PRESTON RIDGE PARTNERS III, LLC, ITS ADMINISTRATOR**

By: SCOTT GILBERT
Title: **MANAGER**

Witness Name:  James Barrows

POA BATCH #10581
POA WAS RECORDED IN MUSCOGEE COUNTY, GA
ON 11/21/2017   /INST: 20170027896 /BK: 12248 /PG: 56

Witness Name:  Julie Michaels

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of _AZ_
County of _Maricopa_

On _10/31/17_, before me, _Lauren J Garcia_ a Notary Public, personally appeared **SCOTT GILBERT, MANAGER of/for PRESTON RIDGE PARTNERS III, LLC, AS ADMINISTRATOR FOR IGLOO SERIES III TRUST, AS ATTORNEY-IN-FACT FOR CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR THE NRZ PASS-THROUGH TRUST VI,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _AZ_ that the foregoing paragraph is true and correct. I further certify **SCOTT GILBERT** signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_Lauren J Garcia_

(Notary Name): _Lauren J Garcia_
My commission expires: _Sep 8, 2021_

LAUREN J GARCIA
Notary Public - Arizona
Maricopa County
My Comm. Expires Sep 8, 2021

Deed Book 05341 Pg   95
Filed and Recorded Jul-28-1999 03:53pm
1999-0029404
M. Linda Pierce
Clerk of Superior Court
Muscogee County, Georgia

William H. Arey
Post Office Box 8641
Columbus, Georgia 31908

File No. _____

## REAL ESTATE LIEN ASSIGNMENT

STATE OF GEORGIA
COUNTY OF Muscogee

Known all men by these present that Southstates Mortgage, Inc., d/b/a Southern Funding Mortgage (the "Transferor", whether one or more) for and in consideration of the sum of One Hundred Thousand Eight Hundred Dollars & No/100, ($100,800.00) paid to the Transferor by EQUIPRIME, INC., 211 SUMMIT PARKWAY, SUITE 108, BIRMINGHAM, ALABAMA 35209, (the "Transferee") the receipt of which is hereby acknowledged, does hereby TRANSFER, SET OVER AND ASSIGN UNTO THE Transferee, that certain mortgage (the "Lien") from John W. Dixon, Mary Dixon to Southstates Mortgage, Inc., d/b/a Southern Funding Mortgage, dated July 23, 1999, recorded in Mortgage Book 5341, Page 81, of the records in the Office of the Clerk of Superior Court Muscogee County, Georgia.

AND, the Transferor does hereby REMISE, RELEASE AND QUITCLAIM unto the Transferee all of the right, title and interest of the Transferor in and to the premise and property designated in the Lien, it being the intention of the undersigned to transfer to the Transferee the said debt.

AND, the Transferor represents and warrants to the Transferee that (1) the lien has not been amended, (2) that there have been no defaults under the Lien, (3) that the Transferor has made no prior assignments of the Lien (4) that the Transferor has good and lawful right to assign the same, (5) that there are no liens superior to the lien except: (X) NONE or ( ) "LIEN" from "Borrower" to "Lender" which the Transferor warrant the unpaid balance on such debt to be no more than $0 (VI) that all disclosures and notices required by the Federal Consumer Credit Protection Act and by the regulations of the board of Governors promulgated pursuant thereto have been properly made and given in regard to the Lien and (7) that all other laws, rules and regulations applicable to the Lien have been fully and faithfully complied with.

IN WITNESS WHEREOF, the Transferor has executed this assignment, and set the Transferor's hand and seal on 28th day of July, 1999.

Southstates Mortgage, Inc. d/b/a Southern Funding Mortgage

LISSA DOWNING
VICE PRESIDENT/OFFICER

WITNESS

STATE OF GEORGIA
COUNTY OF MUSCOGEE

I, the undersigned, a Notary Public in and for the said county and said state, hereby certify that LISSA DOWNING, whose name as VICE PRESIDENT of Southstates Mortgage, Inc., d/b/a Southern Funding Mortgage, has signed the foregoing instrument and who is known to me, acknowledge before me on this day, that being informed of the contents of the conveyance, she and in her capacity as such officer executed the same voluntarily on the day the same bears date with full authority for and as the act of said corporation.

Given under by hand and seal this 28th day of July, 1999.

Notary Public
My Commission Expires: My Commission Expires July 19, 2002

56

Deed Book   5575 Pg   183
Filed and Recorded May-22-2000 10:26am
2000-0021466
M. Linda Pierce
Clerk of Superior Court
Muscogee County County, Georgia

RECORD AND RETURN TO: KAROLEE HUTCHINS
EquiCredit Corp./Sec. Mkt./Doc. Control
P. O. Box 44136
Jacksonville, FL 32231-9957

## ASSIGNMENT OF MORTGAGE(S)

That **EquiPrime, Inc.** a corporation existing under the laws of the state of Alabama, in consideration of the sum of Ten Dollars ($10.00) and other valuable considerations received from **EquiCredit Corporation of America** mortgage(s) set forth below, including the note and debt described in such mortgage(s), and all monies due or to become due thereon **EquiCredit Corporation of America.**

10401 DEERWOOD PARK BLVD. JACKSONVILLE, FL 32256-0505

| **Name** | **Date** | Original Principal **Sum** | Recorded in Official Record Book of: **Muscogee County** |
| --- | --- | --- | --- |
| | | | Book No.     Page No. |
| | | | 5341          87 |
| John W. Dixon | 07/23/99 | $100,800.00 | Inst. 1999-0029403 |
| **Mary Dixon** | | | 7/28/99 |

WITNESS WHEREOF, the assignor has caused this instrument to be executed this the **14th** day of **September,1999.**

**8785099709**

Signed, sealed and delivered in the presence of:

EquiPrime, Inc.

By: _Jeff Shaw_
Jeff Shaw, Vice President

Attest: _Michele Dupont_
Michele Dupont, Authorized Agent

STATE OF ALABAMA
COUNTY OF JEFFERSON

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared **Jeff Shaw and Michele Dupont** well known to me to be the **Vice President and Authorized Agent** respectively of EquiPrime, Inc., named as party of the first part in the foregoing instrument, and that they severally acknowledged executing the same in the presence of two subscribing witnesses freely and voluntarily under authority duly vested in them by said corporation and that the seal affixed thereto is the true corporate seal of said corporation.

WITNESS my hand and official seal in the County and State last aforesaid this the **14th** day of **September,1999.**

My commission expires:
**02/08/2002**

**Bettie A. Stone**
Notary Public, State at Large

Georgia

This Instrument Prepared By:        Return this Document to:
EquiPrime, Inc.
211 Summit Parkway Ste. 108
Birmingham, Alabama  35209

CFN: 20170020899 OR BK 12338 PG 37
05/01/2017 01:00:32 PM    Page: 1 of 3    DEED
Ann L. Hardman Clerk of Superior & State Courts
Muscogee County County, GA
GA INT TRANS TAX $

GEORGIA, MUSCOGEE COUNTY
CLERK'S OFFICE SUPERIOR COURT
FILED IN OFFICE

MAY - 1 2017

AT __11:15a__
DEPUTY CLERK

When recorded return to:
**Richmond Monroe Group**
**82 Jim Linegar LN**
**Branson West, MO 65737**

Recording Requested By:  Select Portfolio Servicing, Inc.
When Recorded Return To: Bill Koch, Select Portfolio Servicing, Inc., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

SPS/TS

## CORPORATE ASSIGNMENT OF MORTGAGE / SECURITY DEED

Client Ref #:
GA/MUSCOGEE

Assignment Prepared on: April 04, 2017

**ASSIGNOR:EQUICREDIT CORPORATION OF AMERICA BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT,** at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

**ASSIGNEE:CITIBANK, N.A., AS TRUSTEE ON BEHALF OF THE NRZ PASS-THROUGH TRUST VI,** at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage/Security Deed Dated: 7/23/1999, in the amount of $100,800.00, executed by JOHN W. DIXON AND MARY DIXON to SOUTHSTATES MORTGAGE, INC., D/B/A SOUTHERN FUNDING MORTGAGE and Recorded: 7/28/1999, Instrument #: 1999-0029403, Book: 5341, Page: 87 in MUSCOGEE County, State of Georgia.

Property Address: 4515 PERU DIRVE, COLUMBUS, GA, 31907

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage / Security Deed.

EQUICREDIT CORPORATION OF AMERICA BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT

On:4-19-17

Signature:~~Mary Angie Judd~~
Name: Mary Angie Judd
Title:    ~~Document Control Officer~~

Signature: _____
Witness: Barbara Neace

Notary Witness

State of UTAH
County of SALT LAKE

Subscribed and sworn to before me on this 19 day of April, in the year 2017 by
Mary Angie Judd
Document Control Officer
WITNESS my hand and official seal,

Notary Expires: 2-19-2020  /#: 687390

**GA/MUSCOGEE**

Deed BK 9227 PG 215, Filed and Recorded 01/08/2008 at 05:40:30 Pa
CFN #20080000455 M. Linda Pierce Clerk of Superior Court Muscogee
County, GA

Recording Requested By: DATA/DOC INTEGRITY
When Recorded Return To: EquiCredit Corp/NationsCredit, 9000 Southside Blvd.,
Mailcode: FL9-400-05-41, Jacksonville, FL  32256-

---

### CORPORATE ASSIGNMENT OF DEED OF TRUST

**MUSCOGEE COUNTY, GEORGIA**
**SELLER'S SERVICING#:**      "DIXON" EQUI01
Prepared By: Karolee L Hutchins, EquiCredit Corporation, 9000 Southside Blvd. FL9-400-04-23,
Jacksonville, FL 32256
Date of Assignment: 11/27/2007
Assignor: THE BANK OF NEW YORK, AS TRUSTEE FOR THE HOLDERS OF THE EQCC ASSET
BACKED CERTIFICATES, SERIES 2001-2, BY SELECT PORTFOLIO SERVICING F/K/A
FAIRBANKS CAPITAL CORP. AS ATTORNEY-IN-FACT at 3815 SOUTH WEST TEMPLE, SALT LAKE
CITY, UT  84115
Assignee: EQUICREDIT CORPORATION OF AMERICA at 9000 SOUTHSIDE BLVD, MAIL CODE
FL9-400-05-41, JACKSONVILLE, FL  32256

Executed By: JOHN W. DIXON AND MARY DIXON  To: SOUTHSTATES MORTGAGE INC DBA
SOUTHERN FUNDING MORTGAGE
Date of Deed of Trust: 07/23/1999
Recorded 07/28/1999 as Instrument/Document No. 1999-0029403 in Deed Book 5341
Page 87  In MUSCOGEE COUNTY, GEORGIA.

Property Address:  4515 PERU DRIVE, COLUMBUS, GA 31907

    KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and
NO/100ths DOLLARS and other good and valuable consideration, paid to the above
named Assignor, the receipt and sufficiency of which is hereby acknowledged,
said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust together with the Note or other evidence of indebtedness (the "Note"),
said Note having an original principal sum of $100,800.00 with interest, secured
thereby, together with all moneys now owing or that may hereafter become due or
owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants
and conveys unto the said Assignee, the Assignor's beneficial interest under the
Deed of Trust.

    TO HAVE AND TO HOLD the said Deed of Trust and Note, and also the said
property unto the said Assignee forever, subject to the terms contained in said
Deed of Trust and Note.  IN WITNESS WHEREOF, the assignor has executed these
presents the day and year first above written:

The Bank of New York, as trustee for the
holders of the EQCC Asset Backed
Certificates, Series 2001-2, by Select
Portfolio Servicing f/k/a Fairbanks Capital
Corp as attorney-in-fact
On _____ (DATE)

By: _____
JEFF YOUNG, V.P.

WITNESS _____
M. WEBB
KLH2(           7 GENERIC MUSCOGEE GA BAT: 87701 KATD

Select Portfolio Servicing F/K/A Fairbanks Capital Corp
as attorney in fact for

WITNESS _____
M. VILLAGRAN

Deed BK  9227  PG  216 M. Linda Pierce Clerk of Superior Court Muscogee County, GA

Page 2 Corporate Assignment of Deed of Trust

ON 101407, before me, CHENILLE ENDERS, a Notary Public in and for Salt Lake County, in the State of Utah, personally appeared before me Jeff Young, V.P. who being duly sworn did say that he/they is/are the signatories authorized by the entity named in the within document to execute same, and he/they did acknowledge to me that he/they executed same.

CHENILLE ENDERS
Notary Expires: 02/09/2010   #563192

NOTARY PUBLIC
CHENILLE ENDERS
951 West 1775 North
Clayton, Utah 84041
My Commission Expires
February 9, 2010
STATE OF UTAH

(This area for notarial seal)

Prepared By: Karolee L Hutchins, EquiCredit Corporation,
9000 Southside Blvd. FL9-400-04-23, Jacksonville, FL, 32256, 1-877-240-5563 904-987-9891
KLH/20071126/0017 GENERIC MUSCOGEE GA BAT: 87701/8785099709 KATD

CFN: 20150014609  B: 11518 P: 240  DEED
05/06/2015 10:23:15 AM  Pages: 3
M. Linda Pierce Clerk of Superior State&Juvenile Courts
Muscogee County County, GA

GA INT TRANS TAX  $

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
BANK OF AMERICA
ATTN: DEBI HAM
FL9-400-05-41
9000 SOUTHSIDE BLVD
JACKSONVILLE, FL  32256

FILED IN OFFICE
2015 MAY -5  A 11: 16
M. LINDA PIERCE
MUSCOGEE COUNTY

Doc #
DIXON

This Space for Recorder's Use Only

TITLE OF DOCUMENT:

# *Gap*
# Corporation Assignment of Mortgage

** This Gap Corporation Assignment of Mortgage is being recorded to correct a break in the chain of title between:

Assignment of Mortgage, Instrument No. 2000-0021466, on 5/22/2000, Book 5575, Page 183, of official records in the County Recorder's Office of MUSCOGEE County, State of GEORGIA.

And

Assignment of Mortgage, Instrument No. 20080000455, on 1/8/2008, Book 9227, Page 215, of official records in the County Recorder's Office of MUSCOGEE County, State of GEORGIA.

Recording Requested By: EquiCredit Corporation
When Recorded Return To: SELECT PORTFOLIO SERVICING, 3815 SOUTH WEST TEMPLE,
SALT LAKE CITY, UT  84415-

---

### CORPORATE ASSIGNMENT OF DEED OF TRUST

**MUSCOGEE COUNTY, GEORGIA**
**SELLER'S SERVICING#:**         "DIXON" EQUI01
Prepared By: Suzanne Baw, EquiCredit Corporation, 9000 Southside Blvd. FL9-400-04-23,
Jacksonville, FL, 32256
Date of Assignment: 02/19/2015
Assignor: EQUICREDIT CORPORATION OF AMERICA at 9000 SOUTHSIDE BLVD,
JACKSONVILLE, FL  32256
Assignee: THE BANK OF NEW YORK, AS TRUSTEE FOR THE HOLDERS OF THE EQCC ASSET
BACKED CERTIFICATES, SERIES 2001-2

Executed By: JOHN W. DIXON AND MARY DIXON  To: SOUTHSTATES MORTGAGE, INC., D/B/A
SOUTHERN FUNDING MORTGAGE
Date of Deed of Trust: 07/23/1999
Recorded 07/28/1999 as Instrument/Document No. 1999-0029403 in Deed Book 5341
Page 87  In MUSCOGEE COUNTY, GEORGIA.

Property Address:  4515 PERU DRIVE, COLUMBUS, GA 31907

    KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and
NO/100ths DOLLARS and other good and valuable consideration, paid to the above
named Assignor, the receipt and sufficiency of which is hereby acknowledged,
said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust together with the Note or other evidence of indebtedness (the "Note"),
said Note having an original principal sum of $100,800.00 with interest, secured
thereby, together with all moneys now owing or that may hereafter become due or
owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants
and conveys unto the said Assignee, the Assignor's beneficial interest under the
Deed of Trust.

    TO HAVE AND TO HOLD the said Deed of Trust and Note, and also the said
property unto the said Assignee forever, subject to the terms contained in said
Deed of Trust and Note.  IN WITNESS WHEREOF, the assignor has executed these
presents the day and year first above written:

EQUICREDIT CORPORATION OF AMERICA
On   February 19, 2015
By:
DEREK E. COATES, ASSISTANT
VICE PRESIDENT

WITNESS                              WITNESS
JAN HILDRETH                         GRACE QUITO

SLB/20        GENERIC MUSCOGEE GA BAT: 96235 KATD

Page 2 Corporate Assignment of Deed of Trust

STATE OF FLORIDA
COUNTY OF Duval

ON February 19, 2015, before me, MARGARET DONNELLY, a Notary Public in and for
the County of Duval County, State of Florida, personally appeared DEREK E.
COATES, ASSISTANT VICE PRESIDENT, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

MARGARET DONNELLY
Notary Expires: 09/14/2018   #FF150706

> MARGARET DONNELLY
> MY COMMISSION # FF 150706
> EXPIRES: September 14, 2018
> Bonded Thru Budget Notary Services

(This area for notarial seal)

Prepared By: Suzanne Baw, EquiCredit Corporation,
9000 Southside Blvd. FL9-400-04-23, Jacksonville, FL, 32256, 1-877-240-5563 904-987-9891
SLB/20150218/0023 GENERIC MUSCOGEE GA BAT: 96235/8785099709 KATD

Investor Loan #

## HOME AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two-Step Documentation Process)

Borrower ("I"):1  **JOHN W DIXON , MARY D DIXON**
Lender or Servicer ("Lender"): **Select Portfolio Servicing, Inc.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **July 23, 1999**
Loan Number:
Property Address [and Legal Description if recordation is necessary] ("Property"):
**4515 PERU DIRVE
COLUMBUS, GA 31907-0000**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants**. I certify, represent to Lender, covenant and agree:

   A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;
   C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
   E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G.  I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

   A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and



---

1. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

OB018

B.   I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification**. If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **June 1, 2015** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on **June 1, 2015**.

A.   The Maturity Date will be: **May 1, 2055**.

B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, Unpaid Amounts) less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$41,223.43** (the "New Principal Balance"). The New Principal Balance will consist of two (2) parts: (i) an amount which will accrue interest at the Note rate shown below, and on my monthly statement as Interest Bearing Principal Balance and (ii) an amount which will not accrue interest, shown below, and on my monthly statement as Deferred Principal Balance.

C.   **$218.25** of the New Principal Balance shall be deferred (the Deferred Principal Balance) and I will not pay interest or make monthly payments on this amount. The new Principal Balance less the Deferred Principal Balance shall be referred to as the Interest Bearing Principal Balance and this amount is **$41,005.18**. Interest at the rate of **7.000%** will begin to accrue on the Interest Bearing Principal Balance as of **May 1, 2015** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **June 1, 2015**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 7.000% | 05/01/2015 | $254.82 | $162.82, may adjust periodically | $417.64, may adjust periodically | 06/01/2015 | 480 |

The Deferred Principal Balance of **$218.25** will be due as a balloon payment on the earlier of, payoff of the Interest Bearing Principal Balance, transfer of the property or on the Modified Maturity Date. The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.
*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

OE018

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.   I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owned under the Loan Documents by the earliest of (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G.   If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.   **Additional Agreements.**  I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other Workout Plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   **Funds for Escrow Items.**  I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items."
I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may re-



MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

OB018

quire. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.   That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, 888-679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.



MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3157
Deferred Principal Balance

OB018

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment.  Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

**BALLOON NOTICE.** THE TERM OF THE LOAN IS 480 MONTHS.  AS A RESULT, YOU WILL BE REQUIRED TO REPAY THE ENTIRE PRINCIPAL BALANCE AND ANY ACCRUED INTEREST THEN OWING ON THE MATURITY DATE.  THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN INCLUDING THE DEFERRED PRINCIPAL BALANCE AT THE END OF TERM.  THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.  ASSUMING ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)

**Select Portfolio Servicing, Inc.**          **JOHN W DIXON**

_____ Date

By: _____          _Mary D Dixon_ (Seal)

                                      **MARY D DIXON**

_____ Date    _May 1, 2015_ Date

_____ [Space Below This Line For Acknowledgement] _____

O6018

 **BSI Financial Services**

314 S. Franklin St. / 2nd Floor
PO Box 517
Titusville, PA 16354
Toll Free 800-327-7861
Fax 814-217-1366
www.bsifinancial.com

September 24, 2018

JOHN W DIXON
MARY DIXON
4515 PERU DRIVE
COLUMBUS        GA 31907

**Loan Number:**

Dear JOHN W DIXON & MARY DIXON:

We are pleased to enclose a Deferment Agreement for your review and signature. This agreement will allow you to bring your Loan current by deferring past due amounts until the maturity of the loan.

To accept this offer, please review the enclosed Agreement, sign and date where indicated on the two copies enclosed and return both signed originals to BSI Financial Services in the enclosed pre-paid FedEx envelope by 10/24/18. We encourage you to make a copy of all signed documents for your records.

Please remit all payments to:
BSI FINANCIAL SERVICES
314 S. Franklin St., 2nd Floor
Titusville, PA 16354

We at BSI Financial Services are committed to providing the best possible service to our customers. If you have any questions regarding this Deferment Agreement, please contact 1-888-738-5873.

Sincerely,

DUKE NGUYEN
Loss Mitigation Specialist
BSI Financial Services NMLS # 38078; # 1195811

Enclosure: Two (2) copies of Deferment Agreement

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

T06_T56-05052016_CA12112015

Licensed as Servis One, Inc. dba BSI Financial Services.
BSI Financial Services NMLS # 38078. Customer Care Hours: Mon. - Fri. 8:00 am to 11:00 pm (ET) and Sat. 8:00 am to 12:00 pm (ET).
If you have filed a bankruptcy petition and there is an "automatic stay" in effect in your bankruptcy case or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally. If either of these circumstances apply, this notice is not and should not be construed to be a demand for payment from you personally. Unless the Bankruptcy Court has ordered otherwise, please also note that despite any such bankruptcy filing, whatever rights we hold in the property that secures the obligation remain unimpaired.

## Deferment Agreement

Mailing Address:          4515 PERU DRIVE
                          COLUMBUS        GA 31907

Subject Property Address: 4515 PERU DRIVE
                          COLUMBUS        GA 31907

Date of Security Instrument and Note:

Loan Number:

This Deferment Agreement is made September 24, 2018, Between JOHN W DIXON AND MARY DIXON ("Borrower"), and BSI Financial Services, servicer for U.S. BANK TRUST NATIONAL ASSOCIATION, (hereinafter referred to as "Lender").

In consideration of mutual promises, and agreements exchanged, the parties hereto agree as follows (not withstanding anything to the contrary contained in the Note and Deed of Trust):

1. BSI Financial Services will defer the monthly mortgage payments for 5/1/2017 through 9/1/2018. Borrower agrees to pay in full the deferred interest amount of $4028.32 and any other amounts still owed under the Note and the Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire unpaid principal balance, or (iii) the Maturity Date.

2. Borrower's next payment is due on 10/1/18 in the amount of $444.94. The amount of Borrower's monthly payments may change in accordance with the terms of the Note. The escrow payments, if any, may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly. Borrower will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full.

3. After such deferment, Borrower agrees to pay the remainder of said Note according to the terms contained therein.

4. In all other respects said Note and Deed of Trust shall remain unaffected, unchanged and unimpaired by reason of this agreement.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument.

6. Nothing in this Agreement shall be understood or construed to be forgiveness of the deferred amount or a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

7.  If the Borrower defaults under the terms of the Note and Security Instrument, all the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also include the deferred amounts under this Agreement.

8.  IF THE MATURITY DATE OF THE LOAN WAS NOT EXTENDED BY THE TERMS OF THIS AGREEMENT, THEN THIS AGREEMENT CONVERTS YOUR LOAN INTO A BALLOON LOAN, WHICH MEANS THAT EVEN IF YOU MAKE ALL YOUR SCHEDULED PAYMENTS WHEN DUE THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE, IF ANY, THE DEFERRED AMOUNT INCIDATED ABOVE, PLUS ALL ACCRUED AND UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER/LENDER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

9.  If Borrower has filed a bankruptcy petition and there is an "automatic stay" in effect in a bankruptcy case or if Borrower has received a discharge of personal liability for the loan obligation, Lender may not and does not intend to pursue collection of that loan obligation from Borrower personally. Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

10. Borrower agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrowers understands that either a corrected Agreement or a correction letter containing the correction will be provided to borrower for signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If you elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and you will not be eligible for a deferment under this agreement.

The undersigned agrees to the conditions of the above agreement.

**Borrower(s)**

Signature _*Mary Dixon*_           Date _9-26-18_

Printed Name _MARY DIXON_

Signature _____           Date _____

Printed Name _____

**BSI Financial Services**

By: _____

Name/Title: _____

Date: _____